UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL WILLIAMS,

                                 Plaintiff,

        v.

NEWBURGH ENLARGED CITY SCHOOL
DISTRICT and THE BOARD OF
EDUCAITON OF THE NEWBURGH
ENLARGED CITY SCHOOL DISTRICT,

                                 Defendants.

No. 16-CV-3276 (KMK)

OPINION & ORDER

Appearances:

David. R Ehrlich, Esq.
Debra L. Wabnik, Esq.
Stagg, Terenzi, Confusione & Wabnik, LLP
Garden City, NY
*Counsel for Plaintiff*

Lewis R. Silverman, Esq.
Gerald S. Smith, Esq.
Silverman and Associates
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Plaintiff Michael Williams ("Plaintiff") brought this Action against Newburgh Enlarged

City School District (the "District") and its Board of Education (the "Board") (collectively,

"Defendants"), alleging that they did not hire him for a series of positions because of his

disability—cancer—in violation of the Americans with Disabilities Act of 1990, 42 U.S.C.

§ 12101.  (Compl. (Dkt. No. 1).)  Before the Court is Defendants' Motion for Summary

Judgment. (Notice of Mot. For Summ. J. (Dkt. No. 48).) For the following reasons, the Motion is granted.

<h2 style="text-align:center">I. Background</h2>

### A. Factual Background

The following facts are taken from Defendants' statement pursuant to Local Civil Rule 56.1, (Defs.' Rule 56.1 Statement ("Defs.' 56.1") (Dkt. No. 50)), Plaintiff's response to Defendants' 56.1 statement, (Pl.'s Counterstatement of Facts Pursuant to Rule 56.1 ("Pl.'s 56.1") (Dkt. No. 59)), and the exhibits submitted by both Parties, (Decl. of Gerald S. Smith, Esq. in Supp. of Mot. for Summ. J. ("Smith Decl.") (Dkt. No. 51); Decl. of Mary Ellen Leimer in Supp. of Mot. for Summ. J. ("Leimer Decl.") (Dkt. No. 52); Decl. of David R. Ehrlich, Esq. in Opp'n to Mot. for Summ. J. ("Ehrlich Decl.") (Dkt. No. 56); Aff. of Michael Williams in Opp'n to Mot. for Summ. J. ("Pl.'s Aff.") (Dkt. No. 57); Decl. of Mary Ellen Leimer in Supp. of Mot. for Summ. J. ("Leimer Supp. Decl.") (Dkt. No. 63); Letter from Gerald S. Smith, Esq. to Court (July 31, 2018) ("Smith Letter") (Dkt. No. 65)), and are recounted in the light most favorable to Plaintiff, the non-movant. The facts as described below are not in dispute unless indicated otherwise.

Plaintiff was first hired by the District in 1997, (Defs.' 56.1 ¶ 5), where he worked for over 14 years as a cleaner, was provided with medical benefits and a pension, and earned more than $40,000 per year by 2011, (Pl.'s 56.1 ¶ 5). Plaintiff was diagnosed with cancer—specifically, Hodgkin's Lymphoma—in February 2011, requiring him to undergo numerous medical treatments, including chemotherapy. (Defs.' 56.1 ¶ 6; Pl.'s 56.1 ¶ 6.) As a result, Plaintiff applied for, and received, medical leave from February 2011 to September 2012. (Defs.' 56.1 ¶ 7; Smith Letter Ex. 1 ("Pl.'s Dep.") 12; Ehrlich Decl. Ex. C. ("Doctor's Notes") 1

(doctor's note verifying Plaintiff's diagnosis and treatment preventing him from working for approximately six months).)[1] Plaintiff's supervisor, Executive Director of Maintenance & Operations for the District Anibal Velez ("Velez"), (Defs.' 56.1 ¶ 8; Pl.'s 56.1 ¶ 9), testified that he only knew that Plaintiff took sick leave, but did not know Plaintiff's specific illness, because such leave "has to go through H[uman] R[esources]," (Smith Letter Ex. 2 ("Velez Dep.") 11). Plaintiff now avers that he discussed his cancer diagnosis and chemotherapy treatment with Velez on numerous occasions before and after he went on medical leave, (Pl.'s Aff. ¶¶ 6, 8), but, to the extent this contradicts his prior deposition testimony that he never had any conversations with Velez in which Velez mentioned his diagnosis, (Pl.'s Dep. 98), it cannot create a dispute of fact. *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony.").[2] Velez testified that he did not remember having any problems with Plaintiff and that Plaintiff was an "average" employee. (Velez Dep. 10.)

Sometime in September 2012, Plaintiff informed Velez over the phone that he was ready to return to work, but could not work the night shift. (Pl.'s 56.1 ¶ 7 (citing Pl.'s Dep. 18).)

---

[1] Plaintiff claims to dispute this fact, but instead asserts additional, irrelevant facts in response. (Pl.'s 56.1 ¶ 7.) Therefore, the Court will not consider this response to create a dispute of fact. *See Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) ("Many of Plaintiff's purported denials—and a number of his admissions—improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts.").

[2] Moreover, although it is undisputed that Plaintiff submitted documentation of his illness when applying for medical leave, (Pl.'s Aff. ¶ 6; Doctor's Notes 1–2), Plaintiff cites no evidence suggesting that Velez read the documents or was informed of their specific contents, (Pl.'s 56.1 ¶ 10; *contra* Velez Dep. 11–12 (testifying that those documents go to HR, not him)).

Plaintiff provided a letter from his physician documenting this issue to Velez and Joanne Lugo, Plaintiff's union representative, at a meeting on an unspecified date. (Pl.'s Dep. 15–17.) The letter, dated September 11, 2012, states

> [Plaintiff] . . . has been treated for Hodgkins Lymphoma. He still complains of fatigue and it is important that he is able to manage that, evening fatigue is more difficult for him. He is still being seen for follow up appointments and is still under my care for [H]odgkins [L]ymphoma.

(Doctor's Notes 4.)

The Parties dispute what occurred at this meeting and afterwards. Mary Ellen Leimer, who was the Assistant Superintendent for Human Resources in the District during this time period, (Defs.' 56.1 ¶ 14), avers that "[o]nce a District employee has been out on leave for an extended period of time, such as [Plaintiff] was, it is not District policy or practice to guarantee a return to the same exact position if and when the employee is medically cleared to return to work," (Leimer Decl. ¶¶ 22). To that end, Velez testified that, at the meeting, he informed Plaintiff that the only open position was a night cleaner, but Plaintiff rejected it and instead retired; Velez also contends that HR, not he, would deal with any accommodation requests. (Velez Dep. 23–27, 36–38; *see also* Defs.' 56.1 ¶ 11 (noting that Plaintiff drafted a letter of retirement in October 2012).) Velez does not remember any discussion about health insurance in the meeting, and claims he does not handle or know anything about Plaintiff's benefits. (Velez Dep. 36–37.) By contrast, Plaintiff contends that he was coerced into retiring. (Pl.'s 56.1 ¶ 11.) Plaintiff testified that, at the meeting, Velez and Lugo informed Plaintiff that there were no day positions available, and, when Plaintiff said he could not work at night, they "refused to accept the letter" from his doctor about being unable to work at night and "expressed to [Plaintiff] that [he] should retire in order to keep from losing [his] benefits." (Pl.'s Dep. 20–22.) Specifically, Plaintiff testified:

> They said that in order to keep my years and to keep my benefits. If I didn't show up to work, if I couldn't show up to work at nighttime I would lose my job and my benefits. So they expressed to me to retire and file for medical disability.

(*Id.* at 22.)[3]

It is undisputed that once an employee retires, he or she is no longer a member of a bargaining unit, and thus is no longer covered by the terms of the District's Collective Bargaining Agreement ("CBA"). (Defs.' 56.1 ¶ 12.)[4] The CBA is between the Board and the Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, the recognized Union for the District. (Ehrlich Decl. Ex. D ("CBA") 4.) The CBA clarifies that "[t]he District recognizes the Union as the sole and exclusive representative of all non-instructional personnel in the [collective bargaining] Unit composed of all [employees] in the . . . District for the purpose of collective negotiations for all conditions of employment," and that "part-time unit members shall only be entitled to benefits where there is a specific reference to the words 'part-time employees' or 'part-time unit members.'" (*Id.* Art. I § 1.) Section 2 of Article VII of the CBA, entitled "Filling of Vacancies Procedure," states:

> Every effort shall be made to fill unencumbered positions within sixty (60) days unless legal requirements cause the period to be greater. All vacancies shall be conspicuously posted for at least ten (10) working days prior to filling of such vacancy, provided, however, that the Employer shall have the right to fill the vacancy on a temporary basis at any time during this period. All employees shall be allowed to apply for vacancies. In filling such vacancies and promotional positions, greater consideration shall be given to qualification, training, performance and attendance. If all such factors are equal, seniority shall be a serious consideration when at least two (2) unit members apply for a lateral transfer

---

[3] Plaintiff now asserts that Velez and Lugo told him "that he would retain his benefits and his years should he . . . come back to work at a later time," but this is not what the cited testimony says; rather, Plaintiff testified only that they told him to *retire* to keep these benefits and to seek medical disability, and returning is not mentioned. (Pl.'s 56.1 ¶ 50 (citing Pl.'s Dep. 21–22).)

[4] Plaintiff "assert[s]" that the CBA "demonstrate[s] the guidelines of the criteria Defendants consider when filling vacancies," but provides no record citation. (Pl.'s 56.1 ¶ 12.)

or at least three (3) unit members apply for a promotion. The parties acknowledge that Civil Service Law, Section 61 takes precedence with respect to promotions in the competitive class. In measuring seniority, the date of first hire shall be utilized.

(*Id.* Art. VII § 2.) The following section clarifies that "[t]he provisions of Section 2 . . . shall not apply to part-time unit members during their first five (5) years of employment in the District."

(*Id.* § 3.) However, Leimer testified that "[i]t's in the contract that part-time workers would be" given priority over outside workers when there is a vacancy, "because they are represented by the bargaining unit." (Smith Decl. Ex. E ("Leimer Dep.") 45.)[5]

The District also has a policy, Policy No. 4120, governing the "Employment of Classified Staff." (Ehrlich Decl. Ex. E. ("Policy No. 4120) 25.) That policy states:

> The Board shall approve the employment, fix the compensation and establish the term of employment for each person employed by this District. When an opening in a classified position is approved, the Superintendent shall check with the Civil Service Commission to ascertain if they have an eligible list. Positions must be offered first to persons in the Civil Service list. If there is no list or no one from the list wants the position, then a provisional appointment can be made from a District list of applicants. Any such appointment shall be made subject to examination. Preference will be given to candidates for classified employment who are residents of this school District.

(*Id.*) The policy does not explicitly define "classified position," but Leimer avers that the Civil Service commission maintains eligible lists for "competitive positions," which are positions requiring applicants to take tests and be ranked based upon their performance. (Leimer Supp. Decl. ¶¶ 7–8.) She further avers that cleaner positions are not "competitive positions," because they are not associated with any examinations or rankings—and indeed, the District's regulations identify the "Cleaner" position as a "labor class" position—and thus the Commission did not maintain an eligible list for those positions. (*Id.* ¶¶ 9–11.) Plaintiff, however, avers that he took

---

[5] Plaintiff disputes this, but cites nothing in support of his assertion aside from Section 2 of the CBA which, as explained above, only applies to members of the bargaining unit, which does include part-time employees in specified instances. (Pl.'s 56.1 ¶ 20.)

a test in 2004 "with the intention of becoming a custodian for the . . . District," and he "was told that by passing the test," which he did, "[he] would be placed on the civil service list." (Pl.'s Aff. ¶¶ 3–4.)

The District posts open positions in all of its facilities, including ones accessible to the public. (Defs.' 56.1 ¶ 18.) Substitute and part-time positions are posted, and candidates are required to complete an application and a letter of intent. (*Id.* ¶ 19.) Defendants contend that its policy is to give preference to part-time employees over outside applicants for vacancies, and its practice is to give preference to substitute employees. (Leimer Dep. 45–46; Velez Dep. 20–22, 35.) This priority is given to the substitute employee even if an outside applicant has more experience. (Leimer Dep. 47; Velez Dep. 20–22.) Velez testified that the purported rationale for this preferential practice is

> Because they're working for the District; they're like internal candidates.
> . . . [T]hey're working for a school so the Principal gets to see their work, the Supervisor gets to see their work. If they're a good worker they want to get those first.

(Velez Dep. 28; *see also id.* at 35 (same).) According to Leimer, this practice has existed since 2000, for at least sixteen years. (Leimer Dep. 46.) Plaintiff argues that it is not mentioned in the CBA or written policies and conflicts with posting open positions to the public, (Pl.'s 56.1 ¶ 21), but, to the extent this practice does exist, his 13-year track record as a Cleaner with the District should entitle him to preferential treatment under it, (*id.* ¶ 22).[6]

Plaintiff saw open positions with the District in 2014 listed on a bulletin board at the Board's building. (*Id.* ¶ 18.) On March 27, 2014, Defendants posted an advertisement for a cleaner position at the Vails Gate school, and Plaintiff submitted a letter of interest for the

---

[6] The Court recognizes that these arguments are somewhat in tension with one another.

position on April 3, 2014, indicating that he was on the District's eligible civil service lists for cleaners and security monitors. (*Id.* ¶ 25.) Plaintiff was subsequently interviewed for the position, (*id.*), but it was filled by an individual, Brittany Cron, who worked in the District, (Defs.' 56.1 ¶ 26), although for only three to five months, (Pl.'s 56.1 ¶ 26). Plaintiff argues that his interview thus belies Leimer's contention that current employees seeking transfers are given preference before anyone else is even considered or interviewed. (Pl.'s 56.1 ¶ 24 (refuting Leimer Dep. 64).)

Defendants posted an advertisement for a cleaner position in the Pre-K Building on August 20, 2014, and Plaintiff submitted a letter of interest on August 26, 2014, again indicating his eligibility for the civil service list. (Defs.' 56.1 ¶ 27; Pl.'s 56.1 ¶ 27.) This position had night hours, but at this time Plaintiff was no longer restricted from working those hours, (Defs.' 56.1 ¶¶ 28–29), as Plaintiff obtained a doctor's letter stating he could work full time without restrictions as of March 20, 2014, (Pl.'s 56.1 ¶ 29 (citing Doctor's Note 5); Pl.'s Dep. 38–39; *see also id.* at 54–55 (testifying that the school told Plaintiff to get "a letter stating [he] can come back with no restrictions" in March of 2014, which he then provided to HR)). It is undisputed that the position was filled by an individual who was currently employed by the District at that time, not Plaintiff. (Defs.' 56.1 ¶ 30.) However, the Parties dispute whether any interviews were held (or necessary). Leimer avers that "[a]s the notation on the posting indicates, no interviews were conducted because the position was filled by a current employee seeking a transfer." (Leimer Decl. ¶ 10 (citing *id.* Ex. H); *see also* Leimer Dep. 63 (same); *but see* Defs.' 56.1 ¶ 30 (citing Velez Dep. 31 (testifying that "a person from another school applied to go here; so we did an interview and moved that person into the position"))). However, Plaintiff contends that this

undated and unmarked handwritten note, reading "No Interviews Filled w/ transfers" does not

show no interviews occurred.  (Pl.'s 56.1 ¶ 30.)

Defendants posted advertisements for two cleaner positions in the Newburgh Free

Academy Main Building on August 25, 2017, and Plaintiff submitted a letter of interest for those

two positions on August 26, 2017, again listing his civil service list eligibility.  (Pl.'s 56.1 ¶ 31.)

Again, the hours for this position included night hours, but Plaintiff was medically cleared to

work these hours and provided documentation to HR.  (Defs.' 56.1 ¶¶ 32–33; Pl.'s 56.1 ¶ 33.)

The position was filled by an individual who was currently employed by the District at that time.

(Defs.' 56.1 ¶ 34.)  Leimer declared that only individuals currently employed by the District

were even interviewed, (Leimer Decl. ¶ 13), but Plaintiff notes that one of them—James Stamper

Jr. —did not submit a letter of interest for the position, and the others had less experience as a

cleaner than Plaintiff, (*compare id.* Ex. K (list of interviewees) *with id.* Ex. L (letters of

interest)).

Defendants posted an advertisement for a cleaner position in the District's Gardentown

School on September 2, 2014, and Plaintiff submitted a letter of interest for the position and was

subsequently interviewed.  (Pl.'s 56.1 ¶ 35.)  The hours for this position included night hours,

which Plaintiff was not restricted from working, as explained above.  (Defs.' 56.1 ¶¶ 36–37; Pl.'s

56.1 ¶ 37.)  Michael Robinson, who had been working for the District as a substitute employee

for eight to nine months, was recommended for the position.  (Defs.' 56.1 ¶ 38; Pl.'s 56.1 ¶ 38.)

On September 15, 2014, Defendants posted an advertisement for a cleaner position in the

District's Meadow Hill Building.  (Pl.'s 56.1 ¶ 39.)  Plaintiff submitted a letter of interest and

was subsequently interviewed.  (*Id.*)  This position again had night hours that Plaintiff could

work.  (Defs.' 56.1 ¶¶ 40–41; Pl.'s 56.1 ¶ 41.)  The individuals that Valez recommended for this

position, Aston Gordon and Tyreek Johnson, were currently employed by the District. (Defs.'
56.1 ¶ 42; Pl.'s 56.1 ¶ 42.) Plaintiff contends that these employees "were substantially less
qualified than Plaintiff," but cites nothing in the record to support this. (Pl.'s 56.1 ¶ 42.)

On March 27, 2014, Defendants posted a job for a substitute school security monitor in
the District. (Leimer Decl. Ex. V.) Plaintiff submitted a letter of interest for the position on
April 3, 2014. (*Id.* Ex. W; Defs.' 56.1 ¶ 43.) The position required applicants to possess a New
York State Security Guard License and to hold both eight and sixteen hour certificates. (Defs.'
56.1 ¶ 44.) However, Plaintiff only had an eight-hour training class certification. (*Id.* ¶ 45.)
Additionally, Velez was not in charge of the Security Department when Plaintiff submitted his
letter of interest for that position. (*Id.* ¶ 46.)

Plaintiff called Leimer several times to discuss why he was not hired for these positions,
but she did not return his calls; indeed, they have not spoken since Plaintiff retired in 2012.
(Pl.'s 56.1 ¶ 15; Defs.' 56.1 ¶ 15.) Plaintiff spoke to Velez after he applied for the open
positions, and Velez asked him to fill out applications; Plaintiff could not recall anything else
Velez said at his deposition. (Pl.'s Dep. 83.) However, he also testified that Velez called
Plaintiff to inform him that he did not get at least one of the positions he applied for. (*Id.* at 97
("Velez gave me a call and expressed to me I didn't get the position, I just said to him okay.").)

Each of the positions Plaintiff applied for in 2014 was filled by a substitute employee.
(Defs.' 56.1 ¶ 47.) Defendants argue that these employees were selected because of their current
employment status, (*id.* ¶ 48), while Plaintiff maintains that this policy does not exist and instead
he was rejected because of his prior cancer diagnosis, (Pl.'s 56.1 ¶ 48). When asked at his
deposition why Plaintiff believed this, he testified:

A: I believe that they felt that my sickness would be a hazard to them, more money, medical bills or whatever they might have to pay out. Whatever, you know, I would have been a hinder to them.

Q: Has anyone from the [D]istrict ever said that to you?

A: No, sir.

Q: Has anyone ever made a comment that led you to believe that?

A: No, sir.

Q: Other than your own belief that this is the case—

A: Yes.

Q: —are there any other grounds for that allegation?

A: That's my belief.

Q: Just so we're clear, your belief is that they didn't want you in any position because you would have been a hindrance?

A: Yes.

Q: Yet at the same time they did offer you a position in September 2012, correct?

A: Yes, they did.

Q: Why did they offer you a position in 2012 when you believe they didn't want you anywhere in the building or in the district?

A: It was a night position open at the time and I believe that they probably knew I couldn't work at nighttime, you know.

Q: But you've never had any conversations with either . . . Velez or . . . Leimer where they have mentioned your diagnosis, correct?

A: No.

(Pl.'s Dep. 97–98.)

Since approximately March 2014, Plaintiff has been employed as a Hall Monitor with the Valley Central School District, which pays $13 per hour, by St. Luke's Hospital, which pays $14 per hour, per diem, and by a summer program at the Newburgh Recreation Department.  (Defs.' 56.1 ¶¶ 1–4; Pl.'s 56.1 ¶¶ 1–3.)

B.  Procedural History

Plaintiff filed the Complaint on May 3, 2016.  (Compl.)  Defendants filed an Answer on July 5, 2016.  (Answer (Dkt. No. 29).)[7]  Mediation was held, but was unsuccessful.  (*See* Dkt. Nos. 31, 32.)  The Court held a conference on September 12, 2016 and set a discovery schedule.

---

[7] The claims against the City of Newburgh, originally a defendant in this Action, were discontinued without prejudice per a stipulation.  (Dkt. No. 28.)

(*See* Dkt. (entry for Sept. 12, 2016).)  On May 22, 2017, Defendants filed a pre-motion letter

indicating the grounds on which they would move for summary judgment.  (Letter from Gerald

S. Smith, Esq. to Court (May 22, 2017) (Dkt. No. 44).)  Plaintiff opposed Defendants' request on

May 25, 2017.  (Letter from David R. Ehrlich, Esq. to Court (May 25, 2017) (Dkt. No. 45).)  The

Court held a pre-motion conference on July 11, 2017 and set a briefing schedule.  (*See* Dkt.

(entry for July 11, 2017); Mot. Scheduling Order (Dkt. No. 47).)

Defendants filed the instant Motion for Summary Judgment and accompanying papers on

September 1, 2017.  (Not. of Mot; Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Mem.")

(Dkt. No. 49); Defs.' 56.1; Smith Decl.; Leimer Decl.)  Plaintiff filed his opposition and

accompanying papers on October 20, 2017.  (Ehrlich Decl.; Pl.'s Aff.; Mem. of Law in Opp'n to

Mot. for Summ. J. ("Pl.'s Mem.") (Dkt. No. 58); Pl.'s 56.1.)  On November 10, 2017,

Defendants filed a reply and supplemental exhibit.  (Reply Mem. of Law in Supp. of Mot. for

Summ. J. ("Defs.' Reply") (Dkt. No. 62); Leimer Supp. Decl.)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir.

2014) (same).  "In determining whether summary judgment is appropriate," a court must

"construe the facts in the light most favorable to the non-moving party and . . . resolve all

ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653

F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper

Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014)

(same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and internal quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (internal quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ."). Indeed, "[w]hile summary judgment must be granted with caution in employment discrimination actions, . . . a plaintiff must prove more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 302 (S.D.N.Y. 2009) (citations and internal quotation marks omitted); *see also Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006) ("[I]t is the law of this Circuit that summary judgment remains available for the dismissal of

discrimination claims in cases lacking genuine issues of material fact, and may be appropriate even in the fact-intensive context of discrimination cases." (citations and internal quotation marks omitted)).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (internal quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). However, a court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

B. Analysis

Plaintiff claims that Defendants violated the ADA by failing to rehire him because of his disability, cancer. (*See generally* Compl.) *See* 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . hiring."). This claim is analyzed under the burden-shifting framework set forth in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  *See Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 231 (2d Cir. 2015).

> Under *McDonnell Douglas*, a plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination; it is then the defendant's burden to proffer a legitimate non-discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination.

*Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014).

Defendants argue that they are entitled to summary judgment because Plaintiff cannot establish a prima facie case of disability discrimination and, even if he can, he cannot show that Defendants' proffered non-discriminatory reasons for its actions were a pretext for disability discrimination.  (*See* Defs.' Mem. 5–9.)[8]  In deciding this Motion, the Court will assume that Plaintiff satisfied his prima facie burden.  *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (listing elements of ADA prima facie case).

However, Defendants provided a legitimate, non-discriminatory reason for not hiring Plaintiff for any of the jobs he applied for in 2014: its practice of showing preference to current employees in the District when selecting candidates for open positions, based on the belief that

---

[8] The Complaint also raises a claim for discrimination based upon a perceived disability. (Compl. ¶¶ 51–58.)  *See* 42 U.S.C. § 12102(1)(A), (C) (permitting an individual to qualify as disabled when "regarded as" having a qualifying impairment).  Plaintiff seems to abandon this claim in light of Defendants' concession that his cancer is a qualifying disability under the ADA. (Pl.'s Mem. 9 n.2.)  *See Katz v. Adecco USA, Inc.*, 845 F. Supp. 2d 539, 548 (S.D.N.Y. 2012) (explaining that cancer in remission qualifies as a disability under the ADA).  In any event, because this claim still requires Plaintiff to create a dispute of fact regarding discrimination *because of* his disability, *see Shannon v. New York City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003) (listing same prima facie case in perceived disability case; 29 C.F.R. § 1630.2(g)(1)(iii) (explaining that perceived disability "means that the individual has been subjected to an action prohibited by the ADA . . . because of an actual or perceived impairment that is not both 'transitory and minor'"), the analysis is the same as with Plaintiff's disability discrimination claim.  (*See also* Pl.'s Mem. 9 n.2 ("The same arguments Plaintiff asserts in support of his disability claim apply to his claim for discrimination based on perceived disability.").)

those candidates have already been observed and evaluated by supervisors. (Defs.' Mem. 6–7.) *See Idlisan v. Mount Sinai Med. Ctr.*, No. 12-CV-8935, 2015 WL 136012, at \*13 (S.D.N.Y. Jan. 9, 2015) (holding that the defendant satisfied its burden at step two because its "written hiring policy expresses a preference for filling vacancies from within, and [the defendant] has pointed to this policy to explain its decision not to hire [the plaintiff]"); *Bailey v. New York City Dep't of Transp.*, No. 93-CV-1121, 1997 WL 26290, at \*7 (S.D.N.Y. Jan. 22, 1997) (finding the defendant's hiring policy, which requires it "to consider applications from [existing] employees before considering applications from persons not employed with [the defendant]," a legitimate and non-discriminatory reason for not rehiring the plaintiff, who had been discharged, because the positions "were all filled from within").

Therefore, to defeat summary judgment, Plaintiff must create a dispute of fact regarding whether Defendants' proffered non-discriminatory reasons for not rehiring him are pretextual. To do so, Plaintiff must "produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by [Defendant] were false, and that more likely than not [disability] discrimination was the real reason for the [failure to rehire him]." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (alterations and internal quotation marks omitted); *see also Flieger v. E. Suffolk BOCES*, 693 F. App'x 14, 18 (2d Cir. 2017) (same). "It is not enough, in other words, to disbelieve [Defendant]; the factfinder must believe . . . [P]laintiff's explanation of intentional discrimination." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993) (emphasis omitted). Plaintiff has not met this standard.

Plaintiff first argues that he "clearly satisfied the purpose" of Defendants' policy, because he worked as a Cleaner for the District for 14 years and "had certainly been observed by

numerous supervisors," including Velez.  (Pl.'s Mem. 10.)  Because Defendants instead repeatedly hired individuals with "a shorter track record" in the District, Plaintiff contends, the reason behind the preferential hiring policy "is false and a pretext for discrimination."  (*Id.*)  Plaintiff cites no information about the other employees in the record such that a factfinder could compare their experience in the District with Plaintiff's, let alone for the specific positions they received instead of Plaintiff, which thoroughly undercuts Plaintiff's claim.  *See Bucek v. Gallagher Bassett Servs., Inc.*, No. 16-CV-1344, 2018 WL 1609334, at *14 (S.D.N.Y. Mar. 29, 2018) (collecting cases holding that the plaintiff must provide evidence of proposed comparator's relevant characteristics, such as prior experience); *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 514 (S.D.N.Y. 2010) ("[V]ague claims of differential treatment alone do not suggest discrimination, unless those treated differently are similarly situated in all material respects." (internal quotation marks omitted)).  Nor, for that matter, does Plaintiff demonstrate whether any of these individuals were not disabled (in this case, cancer-free).

But, even assuming everyone hired instead of Plaintiff for these positions had less experience in the District than him, (*e.g.*, Pl.'s 56.1 ¶¶ 26, 38), this does not make Defendants' proffered reason for not hiring Plaintiff *false*.  Rather, Defendants *followed* the policy, because it is undisputed that every person hired instead of Plaintiff was a current employee of the District. (Defs.' 56.1 ¶ 47.)  *See Bucknell v. Refined Sugars, Inc.*, 82 F. Supp. 2d 151, 158 (S.D.N.Y. 2000) (concluding that the defendant did not deviate from its policy, and thus there was no pretext), *aff'd*, 225 F.3d 645 (2d Cir. 2000).  That the policy may be suboptimal, at least in light of Plaintiff's breadth of experience, does not mean Defendants did not follow it, nor does it mean that the policy is a pretext for *disability discrimination*.  *See Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11-CV-3625, 2013 WL 3968748, at *8 (E.D.N.Y. July 30, 2013) (noting that

"personnel decisions . . . that are incorrect do not support a federal claim unless they are tainted, at least in part, by illegal discrimination" (alteration and internal quotation marks omitted)); *Grant v. Roche Diagnostics Corp.*, No. 09-CV-1540, 2011 WL 3040913, at *11 (E.D.N.Y. July 20, 2011) ("[I]t is well settled that the mere fact that an employee . . . has evidence that the [employer's] decision was objectively incorrect[] does not necessarily demonstrate, by itself, that the employer's proffered reasons are a pretext for [age discrimination]." (internal quotation marks omitted)); *see also St. Mary's Honor Ctr.*, 509 U.S. at 524 ("That the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason of [disability] is correct.").

In the absence of any evidence that following the policy was itself discriminatory, Plaintiff is essentially arguing that he was more qualified than the other individuals who were hired. (*See* Pl.'s Mem. 6 ("Defendants hired Cleaners who were far less qualified and experienced than Plaintiff."); *id.* at 7 (same, asserting they were not on the Civil Service list without citation); *id.* at 10 (arguing that Plaintiff "should have been top on the list" because he "best satisfied the purpose" of the policy); Pl.'s 56.1 ¶ 42 (same for Meadow Hill hires, but citing nothing in the record).) However, "[w]hile [the Court] must ensure that employers do not act in a discriminatory fashion, [it] do[es] not sit as a super-personnel department that reexamines an entity's business decisions." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) (per curiam) (internal quotation marks omitted).[9] Rather, to defeat summary

---

[9] Plaintiff argues that the business judgment rule does not apply here, because he is arguing that the policy was pretextual, not a "bad judgment." (Pl.'s Mem. 14.) However, this begs the question of *how* it was pretextual. The cases cited by Plaintiff still require evidence of *discrimination* to show pretext, *see Weiss v. JPMorgan Chase & Co.*, 332 F. App'x 659, 661 (2d Cir. 2009); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001), and Plaintiff has offered no such evidence here.

judgment, "[P]laintiff's credentials would have to be so superior to the credentials of the person

selected for the job[s] that no reasonable person, in the exercise of impartial judgment, could

have chosen the candidate selected over . . . [P]laintiff for the job[s] in question." *Byrnie v.

Town of Cromwell*, Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001) (internal quotation marks

omitted). Even assuming that Defendants considered Plaintiff's credentials here, as opposed to

hiring from within first, "Plaintiff's subjective disagreement with Defendants' assessment of

h[is] qualifications does not make their decision discriminatory." *Shands v. Lakeland Cent. Sch.

Dist.*, No. 15-CV-4260, 2018 WL 3315738, at *13 (S.D.N.Y. July 5, 2018) (collecting cases).

Plaintiff cites nothing in the record suggesting that Defendants mischaracterized or denigrated

his qualifications, let alone any evidence suggesting that they did so because of his cancer

diagnosis.

Perhaps recognizing the futility of arguing that the policy of preferential hiring for

internal candidates itself was discriminatory, Plaintiff also argues that the "purported policy" is

pretextual because it is not written in the CBA or other District policies in the record. (Pl.'s

Mem. 10–12.) As an initial matter, Plaintiff cites no cases finding pretext merely because a

facially neutral employment policy was unwritten, and, in fact, there is authority to the contrary.

*See Raytheon Co. v. Hernandez*, 540 U.S. 44, 46, 53 (2003) (holding that the defendant's

"proffer of its neutral no-rehire policy," which was "unwritten," "plainly satisfied its obligation

under *McDonnell Douglas* to provide a legitimate, nondiscriminatory reason for refusing to

rehire [the plaintiff]" under the ADA); *Idlisan*, 2015 WL 136012, at *14 ("Reasonable jurors

could disagree with the [defendant's] reliance on an unwritten *subjective* criterion in making

hiring decisions." (emphasis added)); *Velasquez v. Goldwater Mem'l Hosp.*, 88 F. Supp. 2d 257,

263 (S.D.N.Y. 2000) (granting summary judgment to employer where the plaintiff showed only

that "she was terminated for violating [an unwritten] policy," but not that the policy was only implemented against her, and not others outside her protected class).[10]  To the extent Plaintiff argues that Defendants failed to produce any evidence of this policy, (Pl.'s Mem. 10), that is incorrect, (*see* Leimer Dep. 45–46; Velez Dep. 20–22, 35), and in any event, reflects an improper attempt to shift the burden at step three of *McDonnell Douglas* to Defendants, *see St. Mary's Honor Ctr.*, 509 U.S. at 511 (holding that even "rejection of the defendant's proffered reasons [does not] compel[] judgment for the plaintiff," because the plaintiff "at all times bears the ultimate burden of persuasion" that the decision was intentionally discriminatory (emphasis and internal quotation marks omitted)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986) (explaining that even "discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion" and that "the plaintiff must present affirmative evidence in order to defeat" a summary judgment motion, "even where the evidence is likely to be within the possession of the defendant").  Moreover, while not dispositive, the Court notes that, with the exception of Policy 4120, discussed below, none of the other District policies submitted by Plaintiff relate to generic hiring practices.  (*See* Ehrlich Ex. E (providing policies regarding non-discrimination and harassment, sexual harassment, bullying, disability discrimination, rights of handicapped persons, and the Family and Medical Leave Act).)

In any event, Plaintiff's interpretation of Defendants' policies that *are* in the record is incorrect.  First, Plaintiff argues that the CBA does not indicate a preference for existing employees as compared to external applicants, and that the CBA actually contradicts

---

[10] The Supreme Court has noted that courts must treat discrimination claims under disparate treatment and disparate impact theories differently.  *See Raytheon*, 540 U.S. at 52–53.  However, Plaintiff did not pursue a disparate impact theory here.  Rather, his argument is that the policy is fabricated or convoluted so as to not hire *him* because of his disability.  (Pl.'s Mem. 12.)

Defendants' purported interpretation because it emphasizes a candidate's qualifications over seniority.  (Pl.'s Mem. 11.)  The CBA undisputedly only applies to existing employees, (Defs.' 56.1 ¶ 12), and provides that "[a]ll employees shall be allowed to apply for vacancies," (CBA Art. VII § 2).  It then provides a framework by which Defendants will fill "such vacancies and promotional positions": "greater consideration shall be given to qualification, training, performance and attendance," and, "[i]f all such factors are equal, seniority shall be a serious consideration when at least two (2) [bargaining] unit members apply for a lateral transfer or at least three (3) unit members apply for a promotion."  (*Id.*)  Simply put, this provision does not apply to Plaintiff, a retired employee and outside applicant.  *Cf. Shearon v. Comfort Tech Mech. Co.*, 936 F. Supp. 2d 143, 154 (E.D.N.Y. 2013) (holding that a plaintiff "not covered by the CBA . . . has no basis for quasi-contractual relief under the CBA").  Even assuming a rational juror could interpret the CBA as not indicating a preference for existing employees, it surely does not contradict Defendants' proffered, perhaps wholly unwritten, practice of favoring such employees—who are covered by the CBA—in filling vacancies.[11]  Thus, to the extent Plaintiff is arguing that he should have been hired for his qualifications under the terms of the CBA, this document simply does not indicate that Defendants will or must consider qualifications of all applicants for all jobs—as opposed to internal applicants for internal jobs—such that pretext

---

[11] The cases cited by Plaintiff indicate that an employer *can* make this preferential policy more explicit in the CBA, but they do not say that it is necessary an employer does so.  (Pl.'s Mem. 11.)  *See Hill v. Kaleida Health*, No. 07-CV-668S, 2009 WL 3672066, at *2 n.7 (W.D.N.Y. Oct. 30, 2009) (noting that "[u]nder [the defendant']s Collective Bargaining Agreement, priority is given to 'internal' applicants" but not actually quoting the full Agreement language); *Port Washington Union Free Sch. Dist. v. Port Washington Teachers Ass'n*, 380 N.E.2d 310, 311 (N.Y. 1978) ("The collective bargaining agreement at issue in this case provided that preference for the filling of vacancies or new positions be given to members of the Port Washington instructional and administrative staffs when the qualifications of applicants were substantially equal.").

could be found here.  Indeed, Plaintiff offers no evidence that Defendants have ever applied the terms of the CBA to non-employees.

Plaintiff's next argument—that Policy No. 4120 requires that positions be offered first to persons on the Civil Service List—fares no better.  (Pl.'s Mem. 12.)  The Policy's language clearly states that it applies only to "an opening in a classified position," and that, if the Civil Service Commission maintains an eligible list for that position, "[p]ositions must be offered first to persons in the Civil Service list"; only if there is no list or no applicant from the list can "a provision appointment . . . be made from a District list of applicants . . . subject to examination" and with preference for candidates "who are residents of th[e] . . . District."  (Policy No. 4120.)  Plaintiff argues that he thus should have been hired, because he indicated in his letters of interest that he was on the eligible service list for cleaners.  (Pl.'s 56.1 ¶¶ 25, 27, 31; *see also id.* ¶¶ 35, 39 (stating that he met the qualifications for the positions).)  However, he cites no evidence for his assertion that the other individuals hired instead were not on the list.  (Pl.'s Mem. 7, 12.)  Thus, this policy cannot show pretext.  In any event, there is no evidence in the record that any of the positions Plaintiff applied for was a "classified position" for which Policy No. 4120 would apply.  Plaintiff avers that in 2004 he took "*a test* with the intention of becoming a custodian for the . . . District" and "*was told* that by passing the test, [he] would be placed on the civil service list," but he submits no evidence that he actually was placed on the list; rather, he avers that "to the best of [his] knowledge, [he] was and currently remain[s] on the civil service list," and he said so on his letters of interest.  (Pl.'s Aff. ¶¶ 3–4.)  However, that Plaintiff believes he is on a list and that it applies is not evidence that it does.  Indeed, Leimer averred that the cleaner positions were not "competitive" positions for which the Civil Service Commission kept lists.

(Leimer Supp. Aff. ¶ 9.)  Finally, even assuming Policy No. 4120 applied and was not followed by Defendants, Plaintiff cites no evidence tying this to his disability.

Plaintiff also argues that the District's policy of advertising job vacancies publicly undermines its proffered policy of preferential hiring for existing employees.  (Pl.'s Mem. 12–13.)  However, Defendants' preference to hire current employees who are pre-screened and vetted over external candidates is not inconsistent with public advertising.  After all, it is always possible that Defendants could receive no internal applications for a given position, requiring outside hiring.  Plaintiff's suggestion that Defendants "would not advertise job vacancies directly to the public but instead would circulate the posting internally beforehand" may make sense from a business perspective, but in no way indicates that Defendants' stated policy is fabricated, let alone a pretext for disability discrimination.  (Pl.'s Mem. 12–13 (citing *Idlisan*, 2015 WL 136012, at *6–7 (noting that the defendant "posts vacant positions exclusively for . . . employees for seven days" first)).)  Moreover, Defendants offered evidence that they were "required to post all [job] openings" pursuant to other policies and regulations.  (Leimer Dep. 44; *see also* Velez Dep. 19, 27 (same).)  Most importantly, even if the public requirement "undermines" Defendant's proffered explanation for not hiring Plaintiff, it does not make it more likely than not that "discrimination was the real reason."  *Van Zant*, 80 F.3d at 714 (internal quotation marks omitted).

However, Plaintiff argues that, even assuming the preferential hiring policy does exist, he was only disadvantaged by it because of Defendants' earlier discrimination against him in 2012.  (Pl.'s Mem. 13–14; *see also id.* at 8–9 (same in prima facie context).)  Specifically, Plaintiff argues that when he attempted to return to work from medical leave, Defendants refused to accommodate him by reinstating him to his daytime shift and instead coerced him into retiring.

(*Id.*)  While not independently actionable as an instance of disability discrimination, this incident is the strongest evidence Plaintiff presents indicating discriminatory animus by someone employed by Defendants.[12]  Construing the evidence in the light most favorable to Plaintiff, he returned from medical leave in 2012 with a doctor's note saying he could not work at night, but Velez and Lugo offered him only a night position, stating a daytime one was not available.  (Pl.'s Dep. 19–22.)  When Plaintiff said he could not take it, he claims Velez and Lugo told him to retire or risk losing his accrued benefits, and that they even encouraged him to "file for medical disability."  (*Id.* at 22.)

However, even assuming these comments evinced a discriminatory animus on Velez's and Lugo's part, this animus does not show that the subsequent failures to hire him in 2014 were pretextual.  Lugo, Plaintiff's union representative, was not involved in the hiring process for any of the positions Plaintiff applied for in 2014.  (Pl.'s Dep. 70–71 (testifying that he last spoke to

---

[12] Defendants argue that any claims relating to events that took place prior to April 6, 2014—including the alleged forced retirement in 2012 and any job applications submitted prior to that date—are time-barred.  (Defs.' Mem. 11–14.)  *See Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir. 1999) (holding that a plaintiff raising an ADA claim of discrimination must exhaust all administrative remedies by filing an EEOC charge within 300 days of the alleged discriminatory conduct); *De La Rosa v. Lewis Foods of 42nd St., LLC*, 124 F. Supp. 3d 290, 299 n.14 (S.D.N.Y. 2015) ("Under any rule, the ADA's statute of limitations is three years.").  Plaintiff correctly notes that his failure to hire claim for his application to the District's Vails Gate School *is* timely, because he interviewed for the position and was not hired in June 2014.  (Pl.'s 56.1 ¶ 25.)  Plaintiff concedes, however, that the "improper inducement to retire [in 2012] may be time-barred."  (Pl.'s Mem. 16.)  But, he correctly notes that these events may still serve as background evidence of Defendants' discriminatory motives in support of his timely claims.  (*Id.*)  *See Orlando v. BNP Paribas N. Am., Inc.*, No. 14-CV-4102, 2015 WL 6387531, at *18 (S.D.N.Y. Oct. 22, 2015) ("[A plaintiff] may use the prior time-barred acts as background evidence in support of a timely claim of workplace discrimination." (alterations and internal quotation marks omitted)); *Taylor v. New York City Dep't of Educ.*, No. 11-CV-3582, 2012 WL 5989874, at *5 (E.D.N.Y. Nov. 30, 2012) (explaining that an untimely discriminatory act "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue" (quoting *United Air Lines v. Evans*, 431 U.S. 553, 558 (1977))).

Lugo at the 2012 meeting).)[13] Velez was involved in some of the hiring decisions, (*e.g.* Pl.'s 56.1 ¶ 9), although not the school security monitor decision, (Defs.' 56.1 ¶ 46).[14] However, his isolated comment in the 2012 meeting is merely a "stray remark[]," which, "even if made by a decisionmaker, do[es] not constitute sufficient evidence to make out a case of employment discrimination'" under the ADA. *Parron v. Herbert*, No. 17-CV-3848, 2018 WL 2538221, at *9 (S.D.N.Y. May 18, 2018) (alteration omitted) (quoting *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1996)). The Second Circuit considers four factors when determining whether a stray remark is probative of discriminatory intent:

> (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process).

*Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010); *see also Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) (same).

---

[13] Leimer was also involved in the hiring process, but Plaintiff cites no evidence indicating she had any discriminatory animus towards him. *See Johnson v. City of New York Dep't of Parks & Recreation*, No. 09-CV-3980, 2013 WL 878821, at *4 (E.D.N.Y. Mar. 8, 2013) ("[The] plaintiff has offered no evidence of bias affecting any decisionmaker.'); *see also Greene v. Enlarged City Sch. Dist. of Middletown, N.Y.*, 606 F. App'x 624, 626 (2d Cir. 2015) (finding no pretext because the plaintiff did not show that "any of the supervisors" who actually got her fired "were themselves motivated by discriminatory animus").

[14] In any event, Plaintiff waived his claim regarding the school monitor position by failing to respond to Defendants' argument that he was not qualified. (Defs.' Mem. 14 n.6; *see also* Defs.' 56.1 ¶¶ 44–46) (alleging that Plaintiff did not meet training and certification requirements.) *See Simon v. City of New York*, No. 14-CV-8391, 2015 WL 4092389, at *2 (S.D.N.Y. July 6, 2015) (collecting cases holding that a plaintiff abandons a claim by failing to respond to a defendant's argument for dismissal).

Even assuming Verez's comment satisfied the first factor, it cannot satisfy the second and fourth ones.[15] Verez made this statement that Plaintiff should retire to obtain benefits and file for disability insurance two years before Plaintiff applied for the District jobs in question. (*Compare* Pl.'s Dep. 11–12, 20–22 *with* Defs.' 56.1 ¶ 25 (first application).) *See, e.g.*, *Sethi v. Narod*, 12 F. Supp. 3d 505, 540 (E.D.N.Y. 2014) ("District courts in th[e] [Second] Circuit have found that a three-month lapse between alleged discriminatory statements and an adverse employment action is too long a gap to find the remark probative of discrimination."). Moreover, Plaintiff offers no evidence connecting this comment to the decisions not to hire him in 2014. Velez's 2012 comment was related to Plaintiff's attempt to return to work after leave while seeking a daytime accommodation, supported by a doctor's note. (Pl.'s Dep. 20–22.) By contrast, it is undisputed that Plaintiff informed Defendants, through a doctor's note submitted to HR, that he was medically cleared to work night hours as of March 20, 2014, and that Plaintiff was capable of performing the work. (Defs.' 56.1 ¶¶ 28–29, 32–33, 36–37; Doctor's Note 5; *see also* Pl.'s Mem. 7 (citing cases for proposition that it "is hard to believe" Velez did not know about his illness when he "submitted numerous documents to [HR] stating that fact"); *id.* at 8 (stating that any argument Leimer and Velez "did not know" Plaintiff's diagnosis and treatment regime "is simply incredible").) Plaintiff provides no evidence that his 2012 retirement or work limitations were mentioned to him, for example, at any of his interviews, nor does he argue that

---

[15] Although not necessary to decide, the Court is dubious that a reasonable juror could even view this isolated comment as discriminatory. *See, e.g.*, *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 256–57 (S.D.N.Y. 2015) ("[W]hile the remarks related to Plaintiff's disability leave, they do not suggest discriminatory animus about Plaintiff's disability."); *cf. Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993) (holding that just because a characteristic is "correlated with age" does not necessarily make it discriminatory based on age); *Fried v. LVI Servs., Inc.*, No. 10-CV-9308, 2011 WL 4633985, at *9 (S.D.N.Y. Oct. 4, 2011), *aff'd*, 500 F. App'x 39 (2d Cir. 2012) (noting that "courts have consistently held that remarks relating to retirement . . . are insufficient to defeat a motion for summary judgment in an ADEA case").

Velez still thought he was unable to work nights in 2014. (Pl.'s Dep. 83, 97 (noting only conversations with Velez after applications in 2014 included Velez telling him to fill out an application and Velez informing him he did not get at least one of the positions); *cf.* Pl.'s Mem. 7–9 (arguing that Velez knew about Plaintiff's disability before the forced retirement in 2012).)[16] Indeed, Plaintiff testified that no one from the District—including Velez—ever made a comment to him about his diagnosis or led him to believe that it affected his hiring potential. (Pl.'s Dep. 98.) Therefore, Velez's comment was not related to the hiring process in 2014. *See Luka*, 263 F. Supp. 3d at 487–88 ("[T]he alleged remark was neither made close in time to the decision nor in relation to the specific employment decision challenged."); *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 256–57 (S.D.N.Y. 2015) (finding "no nexus" between the discriminatory remarks and the plaintiff's termination because the first "remark was made in the context of [the] [p]laintiff's request for leave").

Ultimately, Plaintiff worked for the District for approximately fourteen years, but points to only one conversation involving allegedly discriminatory comments two years before the adverse employment action at issue; this is insufficient to overcome Defendants' legitimate, nondiscriminatory reasons for not hiring him. *See Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 404–05 (S.D.N.Y. 2013) (finding no pretext where "[t]he plaintiff worked at the School District for approximately five years, but only points to a couple of purportedly discriminatory comments made by two separate people—[including] [one person],

---

[16] As explained earlier, Plaintiff's attempts to introduce new facts in his affidavit opposing the Motion that he discussed his cancer diagnosis and treatment with Velez before and after he took leave in 2012 are rejected as contradictory with his deposition testimony. In any event, Velez's knowledge of Plaintiff's disability after he retired does not alone equate to later *discrimination* on the basis of that disability. Plaintiff does not argue that Velez was informed about Plaintiff's disability but not informed about his full recovery such that Velez would reject Plaintiff for the 2014 positions on this basis.

whose comment was unrelated to the [employment] decision made over three years later"), *aff'd*, 586 F. App'x 739 (2d Cir. 2014); *see also Vuona v. Merrill Lynch & Co.*, 919 F. Supp. 2d 359, 379 (S.D.N.Y. 2013) (collecting cases holding that a few statements are "fewer in number than in  cases where courts have held [discriminatory] comments sufficient to permit an inference of discrimination in employment").  Moreover, Plaintiff does not provide evidence that any of the applicants hired instead of him was not disabled.  *See Decastro v. Norrell Corp.*, No. 15-CV-944, 2018 WL 340032, at *3 (S.D.N.Y. Jan. 9, 2018) ("Plaintiff has failed to allege that [the defendant] gave preferential treatment to non-disabled applicants.").  Furthermore, Plaintiff was interviewed for at least two of the positions he applied for, belying any claim that he was outright disqualified for the job because of his disability.  (Pl.'s 56.1 ¶¶ 25, 39.)[17]

Finally, Plaintiff's conclusory and speculative testimony that he felt discriminated against, which in any event he does not cite, is insufficient to defeat summary judgment.  (Pl.'s Dep. 97–98.)  Specifically, Plaintiff testified that he "believe[d] that [Defendants] felt that [his] sickness would . . . have been a hinder to them" financially, but no one from the District ever said that to him or made a comment leading him to believe that.  (*Id.* at 97.)  When pressed, Plaintiff admitted that the only grounds for that allegation are his "belief."  (*Id.* at 97–98.)  This testimony fails to create a dispute of fact as to pretext.  *See Aspilaire*, 612 F. Supp. 2d at 302 (requiring "more than conclusory allegations of discrimination to defeat a motion for summary judgment"); *Wilcox v. Cornell Univ.*, 986 F. Supp. 2d 281, 286 (S.D.N.Y. 2013) (noting that the

---

[17] Leimer testified that if an employee requested a transfer to a position in the District, that employee "would have been granted the position with no interview taking place."  (Leimer Dep. 64.)  To the extent that Plaintiff believes the fact that he was interviewed shows Leimer was incorrect, the Court agrees.  (Pl.'s 56.1 ¶ 24.)  However, this alone is insufficient to show pretext, because it does not mean *Plaintiff* was not hired because of his *disability*.  *See Van Zant*, 80 F.3d at 714 (requiring the plaintiff to prove that the defendant's reasons "were false, *and* that more likely than not discrimination was the real reason for the" failure to hire him (emphasis added)).

plaintiff's "own speculation" that the employer's reasons "were invented because of her disability" was "insufficient to sustain a discrimination clam"); *see also Farina v. Branford Bd. of Educ.*, 458 F. App'x 13, 16 (2d Cir. 2011) (holding that "conclusory allegations do not suffice" to show pretext under the ADA).

Accordingly, because Plaintiff has not proffered evidence sufficient to create a triable issue of fact as to whether his disability was a motivating cause of his failure to be hired, the Court grants summary judgment to Defendants.

### III. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted. The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 48), enter judgment for Defendants, and close this case.

SO ORDERED.

DATED:     September 28, 2018
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE